**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**
**(SOUTHERN DIVISION)**

BILAL GHULAM
12317 Manvel Lane
Bowie, Maryland 20740,

*Plaintiff*,

v.

Civil Action No.: 26-3176

AR AUTOMOTIVE INC. d/b/a RISING SUN MOTORS
5503 Noble Effort Court
Bowie, Maryland 20720

Serve: SHEIKH UMAIR SHAHID
5503 Noble Effort Court
Bowie, Maryland 20720

COSMO TRADERS, LLC d/b/a QUALITY AUTO REPAIR AND TIRE
11700 Baltimore Avenue
Beltsville, Maryland 20705

Serve: KHAWAJA TAYYAB SAQIBAIN
5503 Noble Effort Court
Bowie, Maryland 20720

HANNAN CRAIN SERVICE, LLC, D/B/A DISCOUNT AUTO REPAIR AND TIRES AND QUALITY AUTO REPAIR AND TIRES
11300-A Old Baltimore Pike
Beltsville, Maryland 20705

Serve: SHEIKH UMAIR SHAHID
5503 Noble Effort Court
Bowie, Maryland 20720

HANNAN TOWING, LLC D/B/A EXPERT AUTO AND TIRES
11300-A Old Baltimore Pike
Beltsville, Maryland 20705

Serve: SHEIKH UMAIR SHAHID
5503 Noble Effort Court

Bowie, Maryland 20720

MARY AUTO INC.
5550 Greenbelt Road
College Park, Maryland 20740

Serve: SHEIKH OMAR SHAHID
5503 Noble Effort Court
Bowie, Maryland 20720

PARKLAWN AUTO CLINIC, LLC
1180 Parklawn Drive
Rockville, Maryland 20852

Serve: SHEIKH BASHIR
5503 Noble Effort Court
Bowie, Maryland 20720

PERFECT AUTO LLC
10815 Baltimore Ave.
Beltsville, MD 20705

Serve: SHEIKH BASHIR
5503 Noble Effort Court
Bowie, MD 20720

SHEIKH OMAR SHAHID
5503 Noble Effort Court
Bowie, Maryland 20720

SHEIKH UMAIR SHAHID
5503 Noble Effort Court
Bowie, Maryland 20720

SHEIKH DANISH SHAHID
5503 Noble Effort Court
Bowie, Maryland 20720

*Defendants*.

## COMPLAINT

Plaintiff, Bilal Ghulam ("Plaintiff"), brings this action against Defendants, three brothers, Sheikh Danish Shahid ("Danish"), Sheikh Omar Shahid ("Omar"), and Sheikh Umair Shahid ("Umair"), and seven of their automotive repair companies for which Plaintiff performed work:

AR Automotive Inc. ("AR"), Cosmo Traders, LLC ("Cosmo"), Hannan Crain Service, LLC ("HCS"), Hannan Towing, LLC, ("Hannan Towing"), Mary Auto Inc. ("MAI"), Parklawn Auto Clinic, LLC ("Parklawn"), and Perfect Auto LLC ("Perfect") (collectively the "Sheikh Enterprise" and together with Danish, Omar, and Umair the "Defendants"). Plaintiff is asserting claims against Omar and the Sheikh Enterprise for violations of his rights under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq*.; the Maryland Wage and Hour Law ("MWHL"), Labor & Empl. Art. §§ 3-415 and 3-427, and the Maryland Wage Payment and Collection Law ("MWPCL"), Labor & Empl. Art., §§ 3-505 and 3-507.2. Plaintiff is asserting pendent claims against Defendants Omar, Umair, and Danish, for battery, and false imprisonment.

In support, Plaintiff alleges as follows:

**THE PARTIES**

1. Plaintiff is an adult resident of Prince George's County, Maryland. He was employed as an administrative assistant by Omar and the Sheikh Enterprise from approximately February 28, 2023, to on or about March 15, 2025. For purposes of this Complaint, Plaintiff is seeking to recover his unpaid wages for period from August 6, 2023, to on or about March 15, 2025. (the "Relevant Period").

2. Omar is an adult resident of Prince George's County, Maryland. Omar was, at all times during the Relevant Period, Plaintiff's "employer" as that term is construed under the FLSA, the MWHL, and the MWPCL because: (1) he is an owner, officer and or member of MAI, AR, and possibly other Sheikh Enterprise Defendants; (2) he was significantly involved in the finances, and day-to-day operations of all of the Sheikh Enterprise Defendants; (3) he, along with Danish, Umair and the trio's father, Sheikh Bashir, was responsible for creating and enforcing the policies and procedures governing Plaintiff's compensation and benefits, including overtime pay; (4) he hired

Plaintiff, set his rate of pay and set his work schedule; (5) he controlled the corporate funds of the Sheikh Enterprise Defendants which were used to pay Plaintiff and he could and did allocate funds as profits for his own benefit and the benefit of his family members; (6) he set and determined the weekly salary for Plaintiff, the frequency of pay, and which of the Sheikh Enterprises paid Plaintiff in any given pay period; (7) he acted with knowledge of or approved the unlawful pay practice of not paying an overtime premium for the copious overtime hours Plaintiff was required to work; (8) he had authority to hire, fire, and discipline Plaintiff; (9) he made or approved the decision to engage in the illegal pay practices that are the subject of this lawsuit in order to make the Sheikh Enterprise Defendants more profitable; (10) he paid Plaintiff and was one of the persons who signed Plaintiff's paychecks; and (11) he maintained Plaintiff's employment records.

3. AR is a corporation organized under the laws of the State of Maryland, with its principal place of business located at 9001 Rhode Island Avenue, College Park, Maryland 20740. AR is an automotive maintenance and repair business and is owned by Defendants Omar and Umair.

4. Cosmo is a limited liability company organized under the laws of the State of Maryland, with its principal place of business located at 11700 Baltimore Avenue, Beltsville, Maryland 20705. Cosmo is an automotive maintenance and repair business.

5. HCS is a limited liability company organized under the laws of the State of Maryland, with its principal place of business at 14982 Baltimore Avenue, Laurel, Maryland 20707. HCS is owned by Defendant Umair.

6. Hannan Towing is a limited liability company organized under the laws of the State of Maryland, with its principal place of business at 1130-A Old Baltimore Pike, Beltsville, Maryland 20705. Hannan Towing is a towing company owned by Defendant Umair.

7. MAI is a corporation organized under the laws of the State of Maryland. MAI maintains its principal office at 5550 Greenbelt Road, College Park, Maryland 20740. MAI is an automotive maintenance and repair business which is owned by Defendant Omar and his father, Sheikh Bashir.

8. Parklawn is a limited liability company organized under the laws of the State of Maryland with its principal place of business at 11800 Parklawn Drive, Rockville, Maryland 20852. Parklawn is an automotive maintenance and repair company owned by Defendant Umair and his father, Sheikh Bashir.

9. Perfect is a limited liability company organized under the laws of the State of Maryland with its principal place of business at 10815 Baltimore Avenue, Beltsville, Maryland 20705. Perfect is an automotive maintenance and repair company owned by Sheikh Bashir.

10. Defendant Omar and the Sheikh Enterprise Defendants jointly employed the Plaintiff during the Relevant Period as they formally and/or as a matter of practice, jointly determined, shared, and/or allocated the power to direct, control, or supervise Plaintiff by direct or indirect means; they formally and/or as a matter of practice, jointly determined, shared, and/or allocated the power to—directly or indirectly—hire or fire Plaintiff and modify the terms or conditions of his employment; the relationship between the eight joint employers was permanent and long-term; through shared management and/or a direct or indirect ownership interest, Plaintiff's work on behalf of all the Sheikh Enterprise Defendants was controlled by the same people, namely Defendants Omar, Umair and Danish, and their father Sheikh Bashir; the work Plaintiff performed on behalf of all the entities was performed at a premises owned or controlled by one or more of the Sheikh Enterprise Defendants and Defendant Omar; and formally and/or as a matter of practice, Omar and the Sheikh Enterprise Defendants jointly determine, share, or

allocate responsibility over functions ordinarily carried out by an employer, such as handling payroll, providing workers' compensation insurance, paying payroll taxes or providing the facilities, equipment, tools, or materials necessary to complete the work.

11. The Sheikh Enterprise Defendants, both individually and collectively, constitute an "Enterprise Engaged in Commerce" within the meaning of 29 U.S.C. § 203 (s)(1), as, at all times during the Relevant Period, each of them had: (1) employees engaged in commerce or the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce; and (2) a gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level that are separately stated).

**VENUE**

12. Venue is proper in this judicial district under 28 U.S.C. § 1391 (b)(1) because the Sheikh Enterprise Defendants do business in Maryland and/or are headquartered in Maryland, while Omar, Danish and Umair are domiciled in Maryland, and the events giving rise to this case occurred in Prince George's County, Maryland.

**SUBJECT MATTER JURISDICTION**

13. The jurisdiction of this Court is based upon 28 U.S.C. § 1331 and 29 U.S.C. § 217. The Court has subject matter jurisdiction under § 1331 because Plaintiff's claims involve federal questions and the Court has supplemental jurisdiction over the Plaintiff's state law claims, and pendant party jurisdiction over Umair and Danish, under 28 U.S.C. § 1367, because Plaintiff's claims share a common nucleus of operative fact as they all arise out of, or relate to, Plaintiff's employment for the Defendants.

## PERSONAL JURISDICTION

14. This Court has specific personal jurisdiction over the Sheikh Enterprise Defendants under Maryland's Long Arm Statute, Md. Code Ann., Cts. & Jud. Proc. § 6-103 because, throughout the Relevant Period, they were all organized under the laws of the State of Maryland, their headquarters are in the State of Maryland, and they regularly transacted business or performed work or auto repair services in the State of Maryland, and they solicited customers in Maryland. *See* § 6-103 (b)(1). In addition, Plaintiff's cause of action arises out of (or relates to) their contacts with the State of Maryland, because, during the time Plaintiff worked for the Defendants in Maryland, they violated the FLSA, MWHL and MWPCL by failing to pay Plaintiff an overtime premium for his overtime hours.

15. This Court also has specific and general personal jurisdiction over Defendants Umair, Danish, and Omar, under Maryland's Long Arm Statute because they are all domiciled in Maryland, and throughout the Relevant Period they regularly transacted business in the State of Maryland by operating one or more of the Sheikh Enterprise Defendants in the State of Maryland. Plaintiff's cause of action arises out of or relates to their contacts with the State of Maryland because during the time Plaintiff worked for the Sheikh Enterprise Defendants in Maryland, Defendant Omar violated the FLSA the MWPCL by failing to pay Plaintiff an overtime premium for his overtime hours and failing to pay him anything at all for some hours of work. Similarly, the tort claims against Defendants Umair and Danish occurred in Maryland and are related to Plaintiff's employment for the Defendants.

## STATEMENT OF FACTS

16. In early 2023, Plaintiff had recently immigrated to the United States from Pakistan to live with his new wife.

17. Plaintiff had been introduced to his wife through his aunt -Robina Roohi – who is married to Sheikh Bashir and the matriarch of the Sheikh Enterprise. Defendants Omar, Umair and Danish are their children. Together, this powerful family dynasty controls a small empire of automotive repair shops which operate in Prince George's and Montgomery Counties.

18. The assistance they offered Plaintiff in immigrating to this country came at a price. Plaintiff was to work for Omar as an assistant, performing various clerical duties for some of the automotive companies the family controlled – the Sheikh Enterprise Defendants.

19. Omar promised to pay Plaintiff a fixed weekly wage and, in exchange, Plaintiff was instructed to work for him no less than 6 days a week, starting at 8:00 a.m. to at least 6:00 p.m. or later. Plaintiff's duties, as determined by Omar, were to travel daily to the various repair shops, pick up the day's receipts, travel back to the office, and spend hours doing data entry, logging each transaction into the Defendants' bookkeeping software. Plaintiff performed other clerical duties as necessary, consistent with this "assistant" position.

20. Plaintiff was never informed by Omar, or anyone else, that he was classified as "exempt" from the overtime requirements of the FLSA and MWHL. Nor was he notified that he was entitled to be paid at least the Maryland minimum wage or that he was entitled to an overtime premium when he worked more than 40 hours a week. Defendants also did not display the requisite FLSA notice in any of the locations Plaintiff worked at.

21. Defendants did not afford Plaintiff a formal lunch break, and when Plaintiff tried to stop working to eat, he was often interrupted by Omar or others with work-related matters.

Because Plaintiff was never relieved of his work duties during his lunch breaks, he is entitled to count this time as part of his weekly work hours.

22. During his employment, the Defendants paid Plaintiff a fixed amount of between $500 to $1,300 each week, which was subject to reduction when Plaintiff was absent due to illness or for personal reasons. Plaintiff estimates that the weekly rates he was paid during his employment were as follows: from February 2023 until approximately May 2023, Defendants paid a fixed amount of $500 per week; from June 2023 to approximately December 2023, Defendants paid a fixed amount of $700 per week; from January 2024 to approximately June 2024, Defendants paid a fixed amount of $900 per week; and from July 2024 to March 2025, Defendants paid a fixed amount of $1,300.

23. During the Relevant Period, Plaintiff worked Monday through Saturday and usually worked 10-12 hours per day from Monday through Friday and nine hours on Saturdays, or approximately 19 to 29 hours of overtime each week. However, Defendants did not pay Plaintiff an overtime premium.

24. Defendant Omar knew or should have known that Plaintiff was working more than 40 hours in a work week because he set Plaintiff's working hours, he managed his schedule, which included more than eight hours in a workday and more than five workdays per week, and directly and through intermediate managers, he observed Plaintiff working six days per week and more than eight hours in a workday.

25. Defendants did not maintain any time records for Plaintiff.

26. In March 2025, Plaintiff resigned from his position with Defendants. Sometime after resigning, Plaintiff went to work, as an employee, for another uncle – Rasool Ghulam – at his new auto repair shop.

27. Plaintiff's resignation was due to Defendants' continued mistreatment of him, requiring him to work long hours with no breaks, and refusing to grant him a nominal increase in his pay.

28. This infuriated Defendants as they believed that Plaintiff was still indebted to them for their assistance in introducing Plaintiff to his wife. Defendants told Plaintiff that they would "destroy him" and ensure that he had no livelihood or family because of, in Defendants' words, Plaintiff's "betrayal".

29. Things came to a head on May 28, 2025. Even though Plaintiff had stopped working for Defendants, they continued to harass him by contacting his family, both here and in Pakistan, and maligning him to his family members. After Plaintiff, in response, revealed certain indiscretions committed by the family patriarch ("Sheikh Bashir") to certain family members, Defendants Omar, Danish, and Umair, along with another man – Mohammad Taha - went looking for Plaintiff to confront him.

30. This confrontation occurred at AR's shop located at 9001 Rhode Island Avenue, College Park, Maryland, 20740. Plaintiff, accompanied by his uncle – Mr. Rasool – who was there on Plaintiff's behalf in case things escalated, was led into a back room in the shop and told to stand. Defendant Omar locked the door and the three of them – Omar, Danish and Umair – surrounded Plaintiff as he stood. Defendant Umair then demanded that Plaintiff turn over his mobile telephone which Plaintiff refused to do. In response, Umair put his hand around Plaintiff's throat and began choking him. Out of fear, Plaintiff did not fight back while Umair continued to choke him and berate him with insults and threats. During this exchange, Umair inflicted the ultimate humiliation on Plaintiff – spitting directly into his face.

31. Defendants Omar and Danish also battered the Plaintiff during this encounter by slapping him and choking him.

32. Plaintiff ultimately capitulated and surrendered his phone, and the passkey, and Defendant Omar accessed the phone and deleted all communications that Plaintiff had with Defendants.

33. The other man present – Mohammad Taha – stood to the side and recorded the entire the exchange, which lasted approximately 40 minutes, on his mobile phone.

34. On two separate occasions during the attack, Plaintiff tried to protest and walk out of the room but was physically rebuffed by Omar, and Umair, who shoved him back against the wall and told him he was not going anywhere until they were finished with him and until he gave them what they wanted – his phone.

35. During the attack, they also threatened Plaintiff with further harm and retaliation, including destroying Plaintiff's reputation, if he continued to work for his uncle – Ghulam Rasool – who they viewed as a competitor to the Sheikh Enterprise.

36. Plaintiff was physically and psychologically impacted by the attack and humiliating treatment he suffered at the hands of the Defendants. He suffered, and continues to suffer, shame, humiliation, fear, anxiety, insomnia, loss of appetite, and gastrointestinal issues as a direct result of what occurred.

**COUNT I**
**VIOLATIONS OF THE FLSA**
**29 U.S.C. §§ 201 – 216 (b)**

**(Omar and Sheikh Enterprise Defendants)**

37. Plaintiff repeats and incorporates by reference all allegations of fact set forth above.

38. At all times relevant to this Complaint Omar and the Sheikh Enterprise Defendants were "employer[s]" of Plaintiff within the meaning of the FLSA.

39. At all times relevant to this Complaint, Plaintiff was an "employee" of Omar and the Sheikh Enterprise Defendants within the meaning of the FLSA.

40. At all times relevant to the Complaint, the Sheikh Enterprise Defendants, both individually and collectively, constituted an "enterprises engaged in commerce" within the meaning of the FLSA.

41. Omar and the Sheikh Enterprise Defendants violated the FLSA by failing to pay Plaintiff one and one-half times his regular hourly rate for each hour over 40 that he worked in a work week.

42. Omar and the Sheikh Enterprise Defendants did not act in good faith or with a reasonable belief that their actions were lawful, entitling Plaintiff to liquidated damages.

43. Omar and the Sheikh Enterprise Defendants acted willfully, which extends the statute of limitations from two to three years.

44. Plaintiff cannot calculate his damages because he is not in possession of all pertinent records.

45. As a result, Omar and the Sheikh Enterprise Defendants are liable to Plaintiff pursuant to 29 U.S.C. § 216 (b) for unpaid and illegally withheld overtime wages and an additional equal amount as liquidated damages, court costs, and attorneys' fees.

**COUNT II**
**VIOLATIONS OF THE MWHL**
**Md. Code Ann., Lab. & Empl. §§ 3-413, 3-420**

**(Omar and Sheikh Enterprise Defendants)**

46. Plaintiff repeats and incorporates by reference all allegations of fact set forth above.

47. At all times relevant to this Complaint, Omar and the Sheikh Enterprise Defendants were “employer[s]” of the Plaintiff within the meaning of the MWHL.

48. At all times relevant to this Complaint, Plaintiff was an “employee” of Omar and the Sheikh Enterprise Defendants within the meaning of the MWHL.

49. Omar and the Sheikh Enterprise Defendants violated the MWHL by failing to pay Plaintiff an overtime premium for his overtime hours and in some instances, paying Plaintiff an hourly rate that was below the Maryland Minimum Wage at the time.

50. Omar and the Sheikh Enterprise Defendants did not act in good faith or with a reasonable belief that their actions were lawful, entitling Plaintiff to liquidated damages.

51. As a result, Omar and the Sheikh Enterprise Defendants are liable to Plaintiff pursuant to the MWHL for his unpaid overtime wages and an additional equal amount as liquidated damages, court costs, attorneys’ fees and costs.

**COUNT III**
**VIOLATIONS OF THE MWPCL**
**Md. Code Ann., Lab. & Empl. §§ 3-501 – 3-507.2**

**(Omar and Sheikh Enterprise Defendants)**

52. Plaintiff repeats and incorporates by reference all allegations set forth above.

53. At all times relevant to this Complaint, Omar and the Sheikh Enterprise Defendants were "employer[s]" of the Plaintiff within the meaning of the MWPCL.

54. At all times relevant to this Complaint, Plaintiff was an "employee" of Omar and the Sheikh Enterprise Defendants within the meaning of the MWPCL.

55. Omar and the Sheikh Enterprise Defendants knowingly, willfully, and intentionally violated the MWPCL by failing to pay Plaintiff the required overtime premium for his overtime hours and in some instances failing to pay him the applicable Maryland Minimum Wage.

56. Omar and the Sheikh Enterprise Defendants' unlawful failure or refusal to pay the required wages was not the result of a bona fide dispute within the meaning of the MWPCL.

**57.** As a result, Omar and the Sheikh Enterprise Defendants are liable to Plaintiff pursuant to the MWPCL for his unpaid overtime and minimum wages and an additional equal amount equivalent to twice the amount of the unpaid wages as liquidated damages plus court costs, attorneys' fees and costs.

**COUNT IV**
**Common Law Battery Under Maryland Law**
**(Omar, Danish, and Umair Only)**

58. On or about May 28, 2023, at 9001 Rhode Island Avenue, College Park, Maryland, 20740, Omar, Danish, and Umair, along with Mr. Taha, cornered Plaintiff in a back office of the shop. Their purpose was to intimidate Plaintiff into stopping work for his uncle, to access his mobile device and destroy communications, and to punish Plaintiff for certain things he said about their father.

59. During this interaction, which lasted approximately 40 minutes, Defendant Omar physically struck Plaintiff with an open palm across his face, striking his cheek area, neck and ear. The impact was hard enough to leave a red mark. Defendant Omar also shoved Plaintiff into a wall.

60. Similarly, Defendant Umair physically struck Plaintiff with an open palm across his face, striking his cheek area, neck and ear. The impact was hard enough to leave a red mark. Defendant Umair also pushed Plaintiff, choked him by wrapping his fingers around Plaintiff's neck and applying pressure, and he spit into Plaintiff's face.

61. Defendant Danish also physically struck Plaintiff in the face and neck area leaving a red mark and pushed Plaintiff several times causing Plaintiff to make contact with the wall behind him.

62. These actions by all three Defendants constituted an intentional touching (or the setting in motion of an event, which resulted in the offensive, non-consensual touching) of Plaintiff and were undertaken deliberately and with actual malice.

63. As a result of Omar's, Danish's and Umair's conduct, Plaintiff suffered substantial damages, including but not limited to extreme and permanent pain and suffering, humiliation,

stress, anxiety, fear, loss of sleep, loss of appetite, and gastrointestinal distress. These actions have negatively affected Plaintiff's relationships with his immediate family and caused him deep-seated emotional and psychological harm which continues to this day.

**COUNT V**
**Common Law False Imprisonment)**
**(Omar, Danish, and Umair Only)**

64. On or about May 28, 2023, at 9001 Rhode Island Avenue, College Park, Maryland, 20740, Omar, Danish, and Umair, cornered Plaintiff in a back office of the shop.

65. They closed the door and stood in between Plaintiff and the exit.

66. On two occasions occasion, after Plaintiff tried to exit the room to get away from the situation, Omar told Plaintiff he could not leave until they finished talking.

67. When Plaintiff, twice, tried to exist, he was rebuffed by Omar, and by Umair, who pushed him back against the wall and told him he could not leave.

68. Omar, Danish, and Umair, acted in tandem to prevent Plaintiff from leaving the room for approximately 40 minutes.

69. These actions by Omar, Umair and Danish, caused Plaintiff to be unlawfully deprived of his liberty to leave the room he was confined to.

70. Omar, Danish, and Umair detained Plaintiff against his will in this room for approximately 40 minutes.

71. As a result of these actions by Defendants Omar, Danish and Umair, and being unlawfully held against his will, Plaintiff suffered substantial damages, including but not limited to extreme and permanent pain and suffering, humiliation, stress, anxiety, fear, loss of sleep, loss of appetite, and gastrointestinal distress. These actions have negatively affected Plaintiff's relationships with his immediate family and caused him deep-seated emotional and psychological harm which continues to this day.

72. By their behavior, Defendants' actions toward Plaintiff demonstrated actual malice on their part.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests that this Court grant him the following relief:

a) enter a judgment against Defendant Omar and the Sheikh Enterprise Defendants, and in favor of Plaintiff under the FLSA, in the amount of Plaintiff's unpaid and illegally withheld overtime wages, plus an equivalent amount as liquidated damages;

b) enter a judgment against Defendant Omar and the Sheikh Enterprise Defendants, jointly and severally, and in favor of Plaintiff based on their violations of the MWHL in the amount of Plaintiff's unpaid and illegally withheld overtime premium and an equivalent sum as liquidated damages; and

c) enter a judgment against Defendant Omar and the Sheikh Enterprise Defendants, jointly and severally, and in favor of Plaintiff, based on their violations of the MWPCL in the amount of Plaintiff's unpaid and illegally withheld overtime premium and liquidated damages equivalent to twice the amount of the unpaid wages;

d) enter a judgment against Defendants Omar, Danish, and Umair, and in favor of Plaintiff, on the tort claims, for an amount to be determined, for compensatory and punitive damages, with interest and court costs assessed against Defendants.

e) award Plaintiff his litigation costs and reasonable attorneys' fees incurred in this action.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable in this action.

Respectfully submitted,

/s/Omar Vincent Melehy
Omar Vincent Melehy
MD Bar No.: 05712
MELEHY & ASSOCIATES LLC
8403 Colesville Road, Suite 610
Silver Spring, MD 20910
Tel: (301) 587-6364
Fax: (301) 587-6308
Email: ovmelehy@melehylaw.com

/s/Andrew Balashov
Andrew Balashov
MD Bar No. 19715
MELEHY & ASSOCIATES LLC
8403 Colesville Road, Suite 610
Silver Spring, Maryland 20910
Telephone: (301) 587-6364
Facsimile: (301) 587-6308
e-mail: abalashov@melehylaw.com

*Counsel for Plaintiff*